UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.  09-cr-10168-PBS |
| | ) | |
| | ) | |
| ROY SASTROM | ) | |

**OPPOSITION TO MODIFICATION OF CONDITIONS OF SUPERVISED RELEASE**

The defendant, Roy Sastrom, hereby files this written opposition to the modification of his supervised release conditions to include a condition requiring him to report directly to the Whiting Forensic Hospital in Connecticut and to self-surrender for his civil commitment. A hearing was held on probation's request for the modification on September 16, 2022 at which time Mr. Sastrom orally opposed the motion. The Court gave Mr. Sastrom leave to file a written opposition following the hearing. The facts set forth in this motion are support in the exhibits counsel provided to the Court prior to the September 16th hearing.[1]

BACKGROUND

The defense briefly summarizes the posture of this case. Mr. Sastrom is currently incarcerated at the U.S. Penitentiary in Tuscon, AZ and is due to be released from the carceral portion of his federal sentence on September 27, 2022. He will then begin the three-year term of supervised release imposed by the Court at his original sentencing. *See* D.E. 5. Conditions of supervised release include mental health treatment. *Id.*

---

[1] Those materials were: 1) the Connecticut Psychiatric Security Review Board ("PSRB") Memorandum of Decision; 2) a transcript of the June 17, 2022 hearing before the PSRB; 3) a transcript of the July 22, 2022 hearing before the PSRB; 4) Mr. Sastrom's Application for Discharge from the Jurisdiction of the Psychiatric Security Review Board filed in the Superior Court; and 5) a letter from Mr. Sastrom's sister, Linda Benedetto.

1

At the time Mr. Sastrom committed the federal offenses for which he was prosecuted in this district, he was subject to a 40-year civil commitment order in the state of Connecticut. That order was entered on July 13, 1994 following a verdict of not guilty by reason of insanity. In June 2022, the Connecticut Psychiatric Security Review Board ("PSRB") held a hearing to review Mr. Sastrom's status.[2] The hearing continued on July 22, 2022. Following the hearing, the PSRB issued a Memorandum of Decision, holding that Mr. Sastrom must be confined in the maximum-security division of the Whiting Forensic Hospital upon his discharge from the Bureau of Prisons. Mr. Sastrom's counsel in Connecticut has filed an Application for Discharge that remains pending in the Connecticut Superior Court.

## ARGUMENT

The detainer from the PSRB is unenforceable. A detainer is not a legal order. Instead, it is a request from one agency asking another agency not to release an individual, and to instead release the person directly to the custody of that agency. Here, the so-called detainer is ineffective because, according to Connecticut officials, Connecticut law enforcement officers cannot travel outside of Connecticut to take custody of a person subject to a civil commitment order. Accordingly, BOP will assist Mr. Sastrom with transportation to this district so he can report to begin serving his term of supervised release.

Because of the detainer's ineffectiveness, probation and the government have sought an order modifying Mr. Sastrom's conditions of supervised release requiring that he report

---

[2] According to the Memorandum of Decision issued by PSRB, the review hearing was held pursuant to CT Gen. Stat. §17a-585. That statute states: "The board shall conduct a hearing and review the status of the acquittee not less than once every two years. At such hearing the board shall make a finding and act pursuant to section 17a-584." Mr. Sastrom and his counsel are unaware of any review hearings conducted prior to June 2022 while Mr. Sastrom was incarcerated in the Bureau of Prisons.

immediately to the Whiting Forensic Hospital upon his release from BOP. However, when his term of incarceration ends, Mr. Sastrom will remain subject to the remainder of his federal sentence and "in custody" of the federal government. *See* 18 U.S.C. §3624(e) (stating that "[a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer…The term of supervised release commences on the day the person is released from imprisonment"); *see also Jackson v. Coalter*, 337 F.3d 74, 78-79 (1st Cir. 2003) (noting that petitioner under supervised probation is still "in custody" and thus able to pursue habeas relief). This Court retains control over Mr. Sastrom and has jurisdiction to determine his conditions of supervised release. The state relinquished jurisdiction over Mr. Sastrom when the federal government prosecuted him criminally while still subject to the commitment order. The PSRB did nothing during Mr. Sastrom's federal prison term to show any continuing interest in him, such as periodic review hearings and reports on his mental health. Mr. Sastrom was sentenced by this court and remains subject to that sentence over the civil commitment.

The Court should honor the sentence imposed by Judge Harrington, which included a term of supervised release and conditions specifically tailored to Mr. Sastrom. When Judge Harrington imposed this sentence, he was aware of the 40-year commitment order from Connecticut, as it was described in the Pre-Sentence Report. He knew the term of incarceration he imposed would end before Mr. Sastrom's commitment order expired. Yet Judge Harrington did not include any condition that Mr. Sastrom submit to the outstanding commitment. Instead, he imposed a sentence that included a term of supervised release with conditions that contemplated that Mr. Sastrom would be released to the community to serve that portion of his sentence.

Those conditions remain sufficient, and Mr. Sastrom has every intention of complying with those conditions. Under 18 U.S.C. §3583(e)(2), the Court may only modify conditions of supervised release after considering the specified §3553(a) factors. Those same factors were considered at the time of Mr. Sastrom's original sentencing, and nothing has changed since the sentencing court first considered those factors when imposing the original sentence and conditions of supervised release in 2010. If anything, Mr. Sastrom has demonstrated an ability to manage his mental health symptoms and engage in treatment during his term of incarceration, especially recently.

In addition, when imposing conditions of supervised release, the court may order special conditions only to the extent that such conditions "involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. §3583(d)(2). Imposition of the requested condition does not comport with this requirement. Confinement to a maximum security mental institution is about as great a deprivation of liberty as there is. It is not reasonably necessary in Mr. Sastrom's case to provide deterrence to criminal conduct, or to protect the public from further crimes, given Mr. Sastrom has not had any incident reports in over seven years and has his mental health well-managed. It certainly is not the sort of treatment Mr. Sastrom requires, as his treating doctor testified. In fact, it will be detrimental to his mental health.

Mr. Sastrom is not asking this Court to ignore the decision of the PSRB. Instead, he is asking this Court to stay any action on the modification. There remains a motion pending in the state Superior Court to discharge Mr. Sastrom from the civil commitment order. That motion

4

rests on strong grounds. The memorandum of decision from PSRB is unsupported in both fact in logic. Dr. Licata, Mr. Sastrom's treating mental health clinician at the BOP, testified before the PSRB that she has met with Mr. Sastrom at least once a week for the past two years. She testified that Mr. Sastrom is managing his symptoms, that he has insight into his mental illness, and that he is invested in his own treatment. She explained that the Bureau of Prisons has a system to determine the level of care an inmate needs. Some inmates require inpatient hospitalization and are therefore placed in a federal medical center. She explained that Mr. Sastrom's care level does not require that level of treatment. She testified that he has not had an incident report in seven years. She offered her opinion at the hearing that Mr. Sastrom should be allowed to return to his family in Florida upon his release from the penitentiary and that he does not require inpatient treatment. She further testified that outpatient therapy would be more appropriate to meet Mr. Sastrom's mental health needs and that continued inpatient care would be detrimental to his mental health. As confirmed by publicly available news reports, Dr. Licata relayed that Mr. Sastrom said he had endured traumatic experiences at Whiting Hospital in the past and that was why he did not want to return there. She said that Mr. Sastrom was motivated to do well upon his release from prison.

    Dr. Kapoor, chief of forensic services for Whiting Hospital, said she did not support Mr. Sastrom's release simply because there was insufficient information about Mr. Sastrom's release plan in Florida. Because Mr. Sastrom had a detainer, the Bureau of Prisons did not engage in the usual release planning for Mr. Sastrom. Nonetheless, he has a three year term of supervised release with conditions, and a supportive sister who has written a letter to the Court about her willingness to have Mr. Sastrom live with her and to support him in whatever way he needs. Dr. Kapoor admitted that patients with severe borderline personality disorder, like Mr. Sastrom, can

regress in long-term inpatient settings. She stated that Mr. Sastrom would not likely meet the criteria for civil commitment today.

Despite this testimony, the Board held that "Roy Sastrom is so dangerous that he requires confinement within a maximum-security setting." This finding is ripe for challenge.[3]

Mr. Sastrom is now almost 60 years old. His mother recently passed away, and he no longer has any family in Connecticut. His closest family member, his sister Linda, lives in Florida. She is retired from a long career at Bank of America and has grown closer to her brother during his term of incarceration. She has witnessed his progress. She hopes he can live with her. She has already started looking into nearby services for her brother. As Mr. Sastrom demonstrated when he addressed the Court at the hearing, he has worked hard to manage his mental health treatment. He is coming to the end of a long prison term, and asks this Court to allow him to complete the sentence as imposed by this Court while challenging the unjust order of the Connecticut psychiatric board.

> Respectfully submitted,
> ROY SASTROM,
> By His Attorney,
>
> */s/ Jane F. Peachy*
> Jane F. Peachy, B.B.O.#661394
> Federal Public Defender Office
> 51 Sleeper Street, 5th Floor
> Boston, MA 02210
> Tel: 617-223-8061

---

[3] Mr. Sastrom's pending motion is further strengthened by a change in the applicable Connecticut law that goes into effect on October 1. Instead of the existing law which states that the primary concern of the Court considering an application for discharge is the protection of society, the new law states that the primary concern is the protection of society *and its secondary concern is the safety and well-being of the acquitee*. If Mr. Sastrom's safety and well-being are taken account, especially in light of the testimony of the doctors who testified that commitment to a maximum security psychiatric facility, where he had endured past trauma, would be detrimental to his mental health, then his motion is likely to succeed.

CERTIFICATE OF SERVICE

    I, Jane F. Peachy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on September 21, 2022.

                                                   */s/ Jane F. Peachy*
                                                   Jane F. Peachy